I believe Section 3 says, the language of it says matters respecting the provisions of the plan. The provisions of the plan. It's not matters respecting provisions that are not part of the plan. And I would argue under its natural interpretation, the extension of the identical same benefit to the end of the coverage year is a matter respecting the provision of the plan. Even though it's not in the plan. Even if it's treated as a separate plan. I see my time has expired. Thank you very much. Good morning, Your Honors. Greg Laro for the National Labor Relations Board. Going back to the issue you were discussing, the unilateral elimination of the benefits. As Your Honors were discussing this morning, that elimination of benefits on January 1st, 2010, was independent of the contract language in which they're relying. As you were discussing, the contractual benefit, the benefit plan referred to in the contract, was terminated on August 1st, 2009, months prior to the termination here. And this idea that the contracts don't cover anything respecting the plan seems false and unlikely. So we're in August 2009 and we have a new source of the short-term disability benefits. We're no longer under the plan. Why would an employee have an expectation that that benefit, which was the same as they had before, could not be unilaterally withdrawn? It always had been before. Before August 2009, no reasonable expectation that there wouldn't be unilateral change and discontinuation. Why would they have any different expectation after August 2009? Well, two things, Your Honor. One, as was discussed this morning, this wasn't some one-time stopgap. This was a benefit that was provided in some form, continuously and regularly, for several months after the termination of the plan. And there was no notice of potential termination until what the board found was an unlawful series of statements that it was being terminated because the employees were union represented. So there was nothing... But if the employees thought it was under the plan, even after August, even if they were wrong about that, if they thought it was under the plan, then they would have had the expectation under the agreement that it could have been unilaterally terminated. None of that would change the settled law requiring bargaining over mandatory terms. And there's no dispute here that this was a mandatory term. The only question is, did the contract privilege that unilateral action even though what was terminated was not benefits under the plan? And that's all I'm trying to make clear, and I think Your Honor stated it this morning. What was terminated on January 1, 2010, was not benefits under the plan. It was something else. It was separate from the plan. I mean, they're sort of between a rock and a hard place. As Mr. Sauer said, they wanted to exercise their unilateral right to terminate this benefit, but they wanted to do it in a non-disruptive way to the employees. They wanted to fill out the plan year. Is that impermissible for them to do and to retain the unilateral right to terminate? I mean, should they have come to you before August and said, what do you think? You know, can we do this, or should they have told the employees we're offering this as a gratuity? How should they have done it to be able to accomplish what seems like a reasonable objective on their part? Yes, Your Honor, they could accomplish their objective legally by honoring their duty to bargain. They could have come to the union and said, this is what we'd like to do. They could honor their duty to bargain. In August 2009, before they extended the unilateral benefit? Well, I think in extending the benefit, if what they're saying is we're exercising our right to unilaterally terminate the plan, I'm assuming there is such, but they want to extend or unilaterally have different benefits. There is a duty to bargain over changes to mandatory subject to bargaining. Is there a duty to bargain before they extend that benefit in August 2009, or can they do that gratuitously and unilaterally? Where the mandatory duty to bargain over mandatory subject applies, you have to do it with notice and an opportunity to bargain. But what if they characterized this as this is a one-time thing, it's just a gratuity, it's just a stopgap. If they characterized it that way and said, look, we're just giving you guys a bonus here to help out, they wouldn't have had to bargain over that. Perhaps not. Those are not the facts here. But if those were the facts, the board would have to consider whether that made it analogous to case law saying an occasional but not regularly given Christmas bonus is not necessarily a termination of employment. But those aren't the facts here. In the board's view, based on the facts here, this was a benefit, the gratuitously given one, that they couldn't remove without bargaining. And as we've discussed, their termination of the benefit was not covered by the contract. Can I ask you about the board's finding about the employer's facilitation of the decertification effort? Right. There were, it was a little bit shifting about what the ground was. Can you just tell us, was it that the company coercively encouraged the employees to engage in a decertification process, and what supports that? The theory is that the employer, through two of its supervisors, directed the employee who started the petition to go back and get more signatures, and that that direct supervisory exhortation could only propel the decertification campaign forward. That wherever it had gotten to by that point, the employer was interjecting themselves in the process and propelling the campaign forward, and that that was the violation. Well, being part of the process isn't unlawful, right? No. So what was it about this interaction that made it unlawful? Well, as the board explained, it wasn't just the interaction or the brief conversation that was unlawful as far as asking an employee a question, you know, how many signatures do you have? The board didn't find that that question was unlawful. When the employer stepped over the line was when they did more than just give information. They just didn't say, just so you know, you need to get up to 50 percent. If you're not there, you might want to consider getting more. You know, they said, go get more signatures. This was a direct, this was a directive from a supervisor, and the board reasonably interpreted that as coercive because the employer is directly propelling the campaign forward, and that's what they can't do. Even if the employees independently chose to start the campaign, the employer can't step in as it did here and propel it forward, and that's the board's theory here. But also, you know, I realize there's some other violations here we haven't discussed, in case the court has other questions, and I think if these violations are found to have merit, I think that the board's finding of an unlawful withdrawal of recognition is well supported, and as you know, there are two independent grounds there. One is the violation we just discussed, directly propelling the campaign forward. It's directly linked to the petition itself, so it conclusively taints the petition under settled law, and in addition, the board also found under the master slack factors that the multiple serious violations here had a causal nexus to the loss of employee support, but the court could infirm under either ground. So unless the court has further questions, I thank the court for its time. Thank you. Thank you. Two minutes for rebuttal. Thank you, Your Honor, and I'd just like to return to a point that was made. Regarding the termination of benefits, I agree. I think that it is impossible to say that the employees would have had an implied term or condition of employment of indefinitely continuing benefits that are subject to mandatory bargaining based on an expectation in a collective bargaining agreement that authorizes termination of those at the employer's sole discretion at any time. So I think that that point is sufficient to address the board's position in its 2015 opinion that because this was a new plan, I dispute that it actually is a new plan. I believe it's an extension of benefits pursuant to the same plan because the testimony was that we were providing the Vanguard benefit through a separate third-party administrator. So I think it naturally falls under the cancellation language that's authorized both in the Reservation of Rights Clause and Article 3 of it. The difficulty for us is that the board didn't so find. The difficulty for us is that that's not what the board found. That is true, but I believe in this particular case, Your Honor, we are in this is de novo review under the contract coverage doctrine. This court applies standard traditional tools of contract instruction to address this issue. So really on the issue of the contract interpretation, there is no real deference to the board that's at stake here. Now, and the board really made no specific finding that this was an implied condition of employment. That's something that's been discussed for the first time on appeal in the board's brief before this court. So I don't think there's any factual finding for the court to defer to that, oh, the employees had some reasonable expectations that this would continue. And I'd emphasize the standard in the board's own case is that for something to be an implied term or condition of employment, it has to be a, quote, established practice. It has to occur regularly over an extended period. And for both reasons, both that this was both envisioned by the company and communicated to the employees all along as something that would terminate on January 1st, and because it was something that was being offered pursuant to a collective bargaining agreement that authorized unilateral termination at any time couldn't possibly have been an implied term that triggered mandatory bargaining. Mr. Sauer, I'm just curious, why would a company decide to offer the time-off benefit to its non-union employees and not to its union employees? I don't know the answer to that. Personally, I don't know that there's evidence in the record for that. I mean, there would be reasons to speculate. I believe the time-off policy is a policy, not an ERISA plan, so I think there's maybe some regulatory benefits to that. Also, the way that they function is different. The time-off policy is a time bank, so in a sense it gives the employees an incentive not to overuse the benefit and so forth. But I do think there's a rough equivalency, so to speak, between the two policies. Thank you, Your Honors. Thank you very much. The case is submitted.
judges: Griffith, Pillard, Wilkins